UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
FRANCES E. LIJOI,

                              Plaintiff,           **REPORT AND
                                                   RECOMMENDATION**

            v.
                                                   CV 01-4536 (ILG) (VVP)
CONTINENTAL CASUALTY CO. and
FORBES, INC.,
                              Defendants.
-------------------------------------------------------------x
POHORELSKY, Magistrate Judge:

        Judge Glasser has referred this matter to me for a Report and Recommendation, pursuant

to 28 U.S.C § 636(b)(1), to determine the amount of damages and attorneys' fees the plaintiff is

entitled to receive, having obtained summary judgment on his ERISA claim.  As to the damages

inquiry, the parties, Lijoi and Continental, have since agreed upon the total amount of damages,

in the form of past due benefits to be paid.  The unresolved issues concern the proper

prejudgment interest rate which should be applied to the agreed-upon amount of damages as well

as the award of attorneys' fees and costs.

        For the reasons set forth below, the undersigned respectfully recommends that a

prejudgment interest of 9% be applied to the damages award and that the plaintiff be awarded

$135,059.96 in total attorneys' fees and $3,229.01 in total costs.

## I.        Prejudgment Interest under ERISA

        The dispute about prejudgment interest rests entirely on whether the court should look to

state law or federal law.  The plaintiff contends that state law, specifically, section 5009 of New

York's Civil Practice Law and Rules which prescribes a rate of 9%, governs.   The defendant

points to federal law, specifically, 29 U.S.C. § 1961, as the proper source for the prejudgment

rate, which, at the time of judgment, was 4.41%. Both parties do agree, however, that neither the ERISA statute nor Second Circuit law mandates the interest rate to be applied here.

The Second Circuit has recognized that "[i]n a suit to enforce a right under ERISA, the question of whether or not to award prejudgment interest is ordinarily left to the discretion of the district court." *Jones v. Unum Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000) (citations omitted); *accord Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 622-23 (2d Cir. 2006) (citation omitted).[1] To that end, the court should examine several factors, including "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Id.* (quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996)). Significantly, the same factors also "inform the court's *choice* of interest rate" since "prejudgment interest is 'an element of [the plaintiff's] complete compensation.' " *Id.* (quoting *Osterneck v. Ernst & Whitney*, 489 U.S. 169, 175 (1989), *and* citing *First Jersey*, 101 F.3d at 1476) (emphasis added) (additional citations omitted).

The court's task in arriving at a proper rate is complicated by the fact that "[t]here is no federal statute that purports to control the rate of prejudgment interest." *Id.* To be sure, section 1961 of Title 28 specifies that the rate applied to "any money judgment in a civil case recovered in a district court," i.e., the *post*judgment rate, be based on the prevailing United States

---

[1]The court notes that Judge Glasser, in referring the matter to this court, had ordered that the plaintiff's award of past due benefits be calculated with interest. *See Lijoi*, 414 F. Supp. 2d at 250 ("Plaintiff's counsel may submit a calculation of disability benefits, with interest . . . ). The court therefore need not conduct a separate analysis under the *Jones* factors as to whether the plaintiff would be entitled to such interest in the first place.

government treasury bill rate.  *Id.*[2]  The Second Circuit has made clear, however, that "[t]he suitability of that postjudgment rate for an award of prejudgment interest will depend on the circumstances of the individual case, and the court need not limit the award of prejudgment interest to the rate at which the injured party would have lent money to the government."  *Jones*, 223 F.3d at 139.

The court turns first to the second and third *Jones* factors.  In light of Judge Glasser's decision, there is little doubt that these factors weigh in favor of the plaintiff.  Judge Glasser considered it a "close call" as to whether the defendant acted in bad faith, citing "evidence of its conflict of interest in reviewing claims, its continued litigation of its position and refusal to admit that it made an erroneous determination despite mounting evidence, [the ALJ] Judge Rosenbaum's findings, and its insistence that even now it needs to initiate a new claims procedure for Lijoi to obtain his permanent disability benefits."  *Lijoi*, 414 F. Supp. 2d at 249. This is precisely the type of conduct ERISA was meant to address.  As one court has observed, "ERISA is a remedial statute that aims to safeguard the rights of workers against the abuses or excesses of institutions that exist to serve them.  Undoubtedly, such an act is to be construed 'not narrowly as through a keyhole, but in the broad light of the evils it aimed at and the good it hoped for."  *Schoenholtz v. Doniger*, 657 F. Supp. 899, 915 (S.D.N.Y. 1987) (quoting *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 557 (1943)) (additional citation omitted).  This view is buttressed by Congress' recognition, in enacting ERISA,

---

[2]*See* 28 U.S.C. § 1961(a) ("Such [postjudgment] interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.").

that owing to the lack of employee information and adequate safeguards concerning [the] operation [of employee benefit plans], it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans.

29 U.S.C. § 1001(a) (1974).

Furthermore, the plaintiff himself has demonstrated, through submissions to this court, the substantial financial burden imposed upon him because of the defendant's unjustified intransigence. For example, the plaintiff had to "cash out" his 401(k) retirement account prematurely, which at that point contained the sum of about $200,000, thus incurring "early withdrawal taxes and penalties." (Decl. of Francis Lijoi ¶ 3, attached to Pl.'s Reply Mot. for Att'y Fees and Costs.) In order to support himself financially, the plaintiff had to sell real estate he owned at steep discounts, and eventually applied for public assistance, after having held a well-paying job from which he earned a "six figure salary." (*Id.* ¶¶ 4, 8.)

The equities of this case favor the plaintiff. That much is clear. The court is aware, however, that prejudgment interest "is not awarded as a penalty," a potential albeit unintended outcome when weighing equitable considerations, "but as compensation for the use of funds." *Whitfield v. Lindemann*, 853 F.2d 1298, 1306 (5th Cir. 1988) (citation omitted). Adequate compensation, as it so happens, is what the first *Jones* factor addresses, and it is to that consideration the court now turns.

In doing so, the court notes at the outset that both rates (4.41% and 9%), or rather, both statutes (28 U.S.C. § 1961 and N.Y. C.P.L.R. 5004), proposed by the parties have their share of support in ERISA-related precedent. *See, e.g.*, *Mallon v. Zurich Am. Ins. Co.*, No. 04-CV-1267, 2006 WL 2223930, at *3 (D. Conn. Aug. 1, 2006) (applying section 1961 rate); *Sheehan v.*

*Metropolitan Life Ins. Co.*, No. 01 Civ 9182, 2005 WL 1020874, at *3 (S.D.N.Y. Apr. 29, 2005)

(applying CPLR 5004 rate); *Critchlow v. First Unum Life Ins. Co. of Am.*, 377 F. Supp. 2d 337,

347-49 (W.D.N.Y. 2005) (applying section 1961 rate); *New York State Food Merchants Ass'n,*

*Inc. v. Haylor, Freyer & Coon, Inc.*, No. 91 Civ 5190, 1995 WL 51166, at *1 (S.D.N.Y. Feb. 8,

1995) (applying section 1961 rate); *Algie v. RCA Global Commc'ns, Inc.*, 891 F. Supp. 875, 899

(S.D.N.Y. 1994) (applying section 1961 rate); *cf. In re Livent, Inc.*, 360 F. Supp. 2d 568, 572

(S.D.N.Y. Mar. 8, 2005) (applying CPLR 5004 rate as prejudgment interest in securities fraud

case).

The court acknowledges the defendant's contention that since the claims here are federal

in nature, the rate imposed should be that set forth in federal rather than state law; indeed, the

prevailing trend among courts in this circuit seems to bear this out – in result, at least.  Several

reasons compel the court to take a different approach, however.

The Second Circuit has made clear that a court need not rely on the federal statutory rate

in ERISA cases where a dispute exists as to prejudgment interest.  At the end, it is the

"circumstances of the individual case" which govern, and the fact that all claims were brought

under the federal ERISA statute is but one variable in an otherwise wide-ranging inquiry.  *Jones*,

113 F.3d at 139.[3]  Indeed, the circuit has recognized that, in a situation like the one here where

the plaintiff seeks past due disability benefits unlawfully withheld, "[i]t would be well within the

discretion of the district court to take into account the rate at which such a plaintiff would have

---

[3]Such "circumstances," as the *Jones* court explained, may include "whether the plaintiff would
have invested the money at some higher rate" or "the rate of interest the defendant would have had to pay
to borrow the money it withheld from the plaintiff."  *Id.* at 139-40 (citations omitted).

paid to borrow money rather than the rate at which she would have lent it to the government."
*Id.* at 140.

While the plaintiff has not supplied the court with information as to the interest charged by private lenders compared to that billed against the government for borrowing from the general public during the period in which he was deprived his disability benefits, such information is ultimately unnecessary to the court's determination. It is clear that any rate charged by an institutional lender for a personal loan would have exceeded the rate of 4.41% proposed by the defendants. Furthermore, the plaintiff has had to divest several interest-bearing accounts, including his 401(k) and personal savings accounts, in order to support himself financially after having lost his ability to work, and having been improperly deprived of disability benefits by the defendant's actions. Full compensation for the plaintiff therefore militates in favor of applying the rate set forth under CPLR 5004, or 9%.

## II.     Attorneys' Fees and Costs

By way of background, Judge Glasser, in his February 13, 2006 opinion, awarded the plaintiff attorneys' fees, which are recoverable by ERISA litigants pursuant to 29 U.S.C. § 1132(g)(1). *See Lijoi*, 414 F. Supp. 2d at 249. In doing so, Judge Glasser allowed plaintiff's counsel to submit "records and documentation for attorney's fees and costs," *id.* at 250, and subsequently referred the matter to this court to conduct a damages inquest, which included the calculation of proper attorneys' fees and costs. (*Lijoi v. Continental Cas. Co.,* No. 01-CV-4536 (E.D.N.Y. Feb. 15, 2006) (order directing clerk of court to enter judgment and referring the parties to Judge Pohorelsky "for further proceedings to determine the amount of the plaintiff's award and attorneys fees.").) Plaintiff's counsel submitted its initial set of papers on March 10,

2006, which contained, in part, billing records to support an award of attorneys' fees and costs (docket entry no. 62).

## A. The Defendant's Rule 54 Timeliness Argument

The court addresses a threshold issue, raised by the defendant, of whether the plaintiff, in submitting his initial set of attorneys' fees papers on March 10, 2006, ran afoul of Rule 54's limitations period which requires all motions for attorneys' fees be made "no later than 14 days after entry of judgment." Fed. R. Civ. P. 54(d)(2)(B).[4] Since judgment was in fact entered on February 15, 2006 (*see* docket entry no. 61), the defendant's position has facial merit. The court, however, finds the fourteen-day limitation period inapplicable here. Furthermore, even if the limitation did apply and was violated by the plaintiff, the circumstances of the case justify setting aside any such violation.

Determining whether Rule 54 applies at all in this case is a matter of simple statutory interpretation. For that reason, it is worth examining the language at issue, and, to the extent necessary, the history behind the drafting of such language. *United States v. Daury*, 215 F.3d 257, 264 (2d Cir. 2000) ("When the plain language and canons of statutory interpretation fail to resolve statutory ambiguity, we will resort to legislative history.") (citation omitted).

The relevant text resides under subsections (A) and (B) of Rule 54(d)(2).[5] Rule 54(d)(2)(A) provides that, "Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of

---

[4]This submission was largely composed of a two-page letter describing the background of the case and several exhibits, one of which contained billing records for purposes of the attorneys' fees determination. (Pl.'s Letter, Mar. 10, 2006, *available at* docket entry no. 62.)

[5]Rule 54 deals generally with judgments and the consequences which flow therefrom. *See generally* Fed. R. Civ. P. 54.

such fees as an element of damages to be proved at trial." Fed. R. Civ. P. 54(d)(2)(A). The rule

goes on to state, in part, that "Unless otherwise provided by statute or order of the court, the

motion must be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P.

54(d)(2)(B).

The defendant's argument cannot be squared with the plain language of the rule.

Motions made pursuant to Rule 54(d), as the rule itself makes clear, deal with "claims" for

attorneys' fees and costs. *See* Fed. R. Civ. P. 54(d)(2)(A). The word "claim," as defined in

Black's Law Dictionary, means "[t]he assertion of an existing right; any right to payment or to

an equitable remedy, even if contingent or provisional." Black's Law Dictionary (8th ed. 2004).

Rule 54(d), therefore, governs situations where a litigant seeks to establish an *entitlement* to

attorneys' fees and costs. It speaks of nothing to a situation, such as the one here, where the

court, on its own initiative, has already rendered judgment as to the plaintiff's entitlement to a

fee award, and where the only issue awaiting judicial resolution is the appropriate amount of

such an award. Indeed, as explained by the drafters when the fourteen-day deadline was first

implemented, Rule 54(d)(2) "does not require that the motion be supported at the time of filing

with evidentiary material bearing on the fees." Fed. R. Civ. P. 54 advisory committee's note

(1993).[6] The rule itself therefore makes the explicit distinction between the attorneys' fees

motion on the one hand and supporting documentation used for calculating those fees on the

---

[6]The Advisory Committee went on further to note that

This material must of course be submitted in due course, according to such schedule as the court
may direct in light of the circumstances of the case. What is required is the filing of a motion
sufficient to alert the adversary and the court that there is a claim for fees, and the amount of such
fees (or a fair estimate).

*Id.*

other.  Here, we are dealing with the latter category, which, as the rule and its drafting history

clearly indicate, is not within the regulatory reach of Rule 54(d)'s timing requirements.

While the plaintiff never formally moved for attorneys' fees in prior proceedings, a fact

not disputed by the plaintiff, and which perhaps the defendant wishes to capitalize upon here,

this, in judicial parlance, is a distinction without a difference.  Judge Glasser, in awarding the

plaintiff reasonable attorneys' fees and costs, conducted a thorough legal analysis,

indistinguishable from the kind he (or this court) would have undertaken if the plaintiff himself

had specifically moved for a fee award.  *Compare Sheehan*, 450 F. Supp. 2d at 324-26, *with*

*Lijoi*, 414 F. Supp. 2d at 249-50.  Thus, having already established his entitlement to a fee

award, the plaintiff need not, nor should he be required to, repeat the process by filing a Rule 54

motion whose purpose would be to seek the kind of relief already granted the plaintiff, i.e.,

attorneys' fees and costs.  Since a Rule 54 attorneys' fees motion is no longer necessary, it

follows that the fourteen-day deadline that governs the filling of such a motion is inapplicable

here.

Nor would the stated policy of streamlining the attorneys' fees application process be

furthered by enforcing the fourteen-day deadline in this situation.  As the Second Circuit recently

explained,

> Congress's reasons for its 1993 addition to Rule 54(d)(2)(B) (the fourteen-day
> deadline) were three-fold: (1) to provide notice of the fee motion to the non-
> movant before the time to appeal expires; (2) to encourage a prompt ruling on
> fees to facilitate a consolidated appeal on both the merits and the attorneys' fees
> issue; and (3) to resolve fee disputes efficiently, "while the services performed are
> freshly in mind."

*Tancredi v. Metro. Life. Ins. Co.*, 378 F.3d 220, 227 (2d Cir. 2004) (quoting Fed. R. Civ. P. 54

advisory committee's note (1993)) (additional citation omitted).  Clearly, Judge Glasser's

opinion declaring the plaintiff to be entitled to fees and immediately referring the determination of those fees to me achieved all three of those purposes, rendering a further motion superfluous.

Even if, for argument's sake, Rule 54(d)(2)(B)'s 14-day deadline did apply here and was violated by the plaintiff, the court may still consider the attorneys' fees application if "excusable neglect" is shown. A successful showing of "excusable neglect" depends upon several factors, including " '[1] [t]he danger of prejudice to the [opposing party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was in the reasonable control of the movant, and [4] whether the movant acted in good faith.' " *Tancredi*, 378 F.3d at 228 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). The diverse nature of this four-part inquiry makes clear that "excusable neglect" is an " 'elastic concept,' that is 'at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.' " *Id*. (quoting *Pioneer*, 507 U.S. at 392, 395).

Considering that the balance of equities in this matter favors the plaintiff, it is no surprise "excusable neglect" is readily shown here. The defendant suffers no prejudice since it had ample notice, by virtue of Judge Glasser's opinion, that attorneys' fees would, at the very least, be an issue in post-judgment proceedings. Neither was the delay in filing the initial set of attorneys' fees papers unreasonably lengthy or unjustified. This matter has been pending for more than seven years – a result attributed primarily to the defendant's "choosing to litigate its denial of [the plaintiff's] benefits rather than accept the plain fact that he is unable to work," *Lijoi*, 414 F. Supp. 2d at 231 – and a nine-day "delay" would not have impacted the proceedings in any

appreciable way.[7]  Furthermore, the plaintiff had valid reasons for submitting its attorneys' fees papers when he did – that is, on March 10, 2006.  (*See* docket entry no. 62.)  As counsel for the plaintiff explained in a letter accompanying its March 10th attorneys' fees submission, the filing was made "in anticipation of" a March 13, 2006 conference, which this court scheduled after having been referred the matter by Judge Glasser.

While it may be argued that the submission was legally insufficient for purposes of a Rule 54 attorneys' fees motion, such an oversight, if it can be called that, is readily explainable.  Judge Glasser had already awarded the plaintiff attorneys' fees, and, in doing so, established the legal foundation for such an award.  The plaintiff therefore had a sound basis for believing that it would not be required to engage in the same legal analysis which had already been conducted by the court.  Of equal significance, Judge Glasser, after having found attorneys' fees warranted, specifically directed the plaintiff to submit billing records so the court could arrive at an appropriate fee award – a directive the plaintiff obviously complied with.  The court therefore sees no dilatory or ill motive on the part of the plaintiff in the timing of the submission; nor can it be attributable to "mere inadvertence."  *Cf. Tancredi*, 378 F.3d at 228 ("Absent a sufficient

---

[7]The nine-day "delay" is based on the calculation that the plaintiff filed his initial set of attorneys' fees papers on March 10, 2006, nine days after the supposed fourteen-day deadline of  March 1, 2006 (judgment having been entered on February 15, 2006).  It should be noted that this calculation is actually less favorable to the plaintiff than that advocated by the defendant, which presses for a complete rejection of the attorneys' fees application on the basis of a *one-day* delay.  This shorter delay stems from the defendant's reliance on the later date of when the judgment was electronically filed on the docket, February 23, 2006, as the date of entry, rather than when it was entered by the clerk, thus pushing back the 14-day deadline to March 9, 2006.

reason for its delay, the fact that the delay and prejudice were minimal would not excuse MetLife's mere inadvertence.").[8]

Accordingly, even if Rule 54's 14-day deadline applied here and was violated by the plaintiff, the present circumstances support a finding of excusable neglect.  Further inquiry as to an appropriate attorneys' fees award is thus warranted.

### B.    Attorneys' Fees and Costs – The "Lodestar" Method

To facilitate the court in its fee calculation, counsel for the plaintiff submitted billing records for work performed from March 2001 to February 2006 – a period in which, according to the plaintiff's submission, a total of $162,123.09 in fees and costs was incurred.[9]  The defendant strenuously disputes this figure, attacking both the rate charged, as well as the hours spent, substantial portions of which it views as unnecessary and duplicative.

In calculating reasonable attorneys' fees, the court employs the "lodestar" method, which requires a determination of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  This assessment "should be based on 'prevailing market rates,' for comparable attorneys of

---

[8]The defendant's reliance on *Tancredi*, 378 F.3d at 226-28, and *Bender v. Freed and Bergquist Co. Employee Health Plan*, 436 F.3d 747 (7th Cir. 2006), is misplaced.  While both cases contain analyses of Rule 54's 14-day deadline, neither involve a scenario where the prevailing party had already been awarded attorneys' fees before filing a Rule 54 attorneys' fees motion, and the effect such an award had on Rule 54's timeliness requirement.  *Cf.  Bender*, 436 F.3d at 749 (noting that the lower court granted the defendant health plan summary judgment but declined to award attorneys' fees because the defendant  " 'failed to demonstrate why it is entitled to attorneys' fees.' "); *Tancredi v. Metro. Life Ins. Co.*, 149 F. Supp. 2d 80 (S.D.N.Y. 2001) (granting the defendant's motion to dismiss without discussion or analysis of attorneys' fees), *rev'd*, 378 F.3d at 220.

[9]While the court's fee determination for this period may end the matter as to defendant, Continental, the plaintiff has informed the court that continuing litigation involving the other defendant, Forbes, may result in subsequent requests for attorneys' fees.

comparable skill and standing in the pertinent legal community." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Moreover, "[h]ours that are 'excessive, redundant, or otherwise unnecessary,' " should be excluded. *Id.* at 173 (quoting *Hensley*, 461 U.S. at 434). Courts in this circuit have employed the "lodestar"method to resolve attorneys' fees disputes in ERISA cases. *See, e.g.*, *Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 486-88 (2d Cir. 2002); *Winkler v. Metro. Life Ins. Co.*, No. 03 Civ 9656, 2006 WL 2347826, at *2 (S.D.N.Y. Aug. 10, 2006); *Conners*, 2003 WL 1888726, at *1.

A fee application must be accompanied with contemporaneous time records which "specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch*, 148 F.3d at 173 (citations omitted). "If such records are inadequate the Court may reduce the award accordingly." *Vernon v. Port Authority of New York and New Jersey*, 220 F. Supp. 2d 223, 229 (S.D.N.Y. 2002) (Leisure, J.). Moreover, for cases involving "voluminous fee applications," it may be "unrealistic to expect a trial judge to evaluate and rule on every entry in an application." *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) (citations omitted). To remedy this, courts in this circuit have discretion to simply deduct a reasonable percentage of the number of hours claimed " 'as a practical means of trimming fat from a fee application.' " *Kirsch*, 148 F.3d at 173 (quoting *Carey*, 711 F.2d at 1146).

Finally, it should be emphasized that "there is a 'strong presumption' that the lodestar figure represents a reasonable fee." *Morris v. Eversley*, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

### 1.      Reasonableness of Hourly Rate

The court deals first with several contentions made by the defendant concerning the alleged factual insufficiency of the plaintiff's attorneys' fees application, which, it argues, requires a reduction in the hourly rates sought.  The first alleged factual insufficiency relates to the omission of information regarding the experience and background of the attorneys who billed on the case.  The court rejects this argument as a basis for a fee reduction.  While experience is indeed a relevant factor in determining a reasonable hourly rate, the alleged omission has since been remedied by plaintiff's counsel in subsequent submissions.  That particular allegation of factual insufficiency is therefore mooted and cannot support a deduction in the hourly rate.

The defendant points to another, more critical, defect in the plaintiff's submissions, however, namely, the failure to specify the hourly rates charged by certain attorneys.  In particular, of the eleven attorneys who, billing records indicate, worked on the case, hourly rates are specified for only five of those attorneys; specifically:

| | |
|---|---|
| Evan Schwartz | $400.00 |
| Michail Hack | $250.00 |
| David Tobachnic | $200.00 |
| William O'Mahony | $200.00 |
| Virginia Wielgus (Paralegal) | $100.00 |

The records fail to indicate the rates charged by the other six attorneys[10] who worked on the case.[11]

To be sure, the court is not entirely without guidance in arriving at a reasonable rate for those attorneys. Mr. Schwartz, a partner and supervising attorney on the plaintiff's case, submitted an affidavit which provides, in broad detail, the rates generally charged by his law firm for attorneys of differing experience levels. For example, the firm charges an hourly rate of $350.00 for "certain counsel," and $200.00 to $300.00 for associates. (Schwartz Aff. ¶ 10.)[12] Still, without further guidance, the affidavit is of little use in determining, with specificity, the rate charged by each attorney who worked on the plaintiff's case so it can be judged against "the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.' " *Pinner v. Budget Mortgage Bankers, Ltd.*, 336 F. Supp. 2d 217, 220 (E.D.N.Y. 2004) (Spatt, J.) (citation omitted). This lack of information therefore warrants a reduction in the overall amount of attorneys' fees. *See Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").

---

[10]The court is able to identify four by name, Eve-Lynn Gisonni, Jason A. Newfield, Justin C. Frankel, and Richard Quadrino. The other two attorneys are only identified in the billing record by their initials, BC and TMJ.

[11]These six attorneys worked on the case during what can be described as the first billing cycle, which ran from March 2001 to February 2004. In contrast, the five attorneys for whom billing information has been provided worked on the matter during the second billing period, covering May 2004 to February 2006. Differences in the billing cycles are explained below. *See infra* p.16.

[12]Dividing the total fees by hours spent during the second billing period yields an average hourly rate of $291.00.

## 2.    Reasonableness of Hours Billed

The defendant next argues that the hours billed were unreasonable and excessive, thus warranting a deduction in the amount of fees sought. According to billing records, counsel for plaintiff spent 541.65 hours on a case which spanned a period of almost five years. A closer examination reveals that plaintiff's counsel billed a total of 267.90 hours during the first billing cycle, from March 2001 to February 2004, which involved primarily pre-trial matters such as discovery and mediation, and 273.75 hours during the second cycle, from May 2004 to February 2006, when the bulk of time was spent on summary judgment briefing. The court first addresses those grounds which, in its view, warrant a fee reduction.

The defendant contends that a reduction is necessary because an unreasonable number of attorneys worked on the matter thus resulting in duplicative effort and redundant charges. There is some merit to this argument. In particular, counsel's decision to reflexively bill all the time spent by attorneys who have worked on the matter, regardless of their history or experience with the case, evinces a lack of "billing judgment." As the Second Circuit explained, "billing judgment" requires "[c]ounsel for the prevailing party . . . act as he would under the ethical and market restraints that constrain a private sector attorneys's behavior in billing his own clients." *Lunday v. City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994) (citing *Hensley*, 461 U.S. at 434) (additional citation omitted). To be sure, a close reading of the billing records indicates that, while a total of eleven attorneys and paralegals billed on the case, the majority of the work was performed by only a handful of attorneys. For example, the records indicate that Jason Newfield, then an associate at the firm, had primary responsibility over the file during the first billing cycle and handled almost all aspects of the case at that time. William O'Mahony, also an

associate at the firm, took over Mr. Newfield's role during the second billing cycle, a fact evidenced by the billing records, where, of the 273.75 hours billed during that period, 180.25 of these hours were attributed to work performed by Mr. O'Mahony. (Pl.'s Mar. 10, 2006 Letter Ex. D.) Nevertheless, the constant shuffling of attorneys necessarily results in higher fees since those attorneys must spend extra time getting acquainted with the case. At the very least, these attorneys take a longer time performing tasks that would otherwise be completed with greater efficiency and effectiveness by attorneys who have been staffed on the case for an appreciable period of time. Even if, as plaintiff's counsel explained, turnover at the firm or scheduling conflicts necessitated the staffing of a rather high number of attorneys (Schwartz Aff. ¶¶ 19-20), those are precisely the kind of circumstances that counsel must take into account when exercising "billing judgment" to determine what should or should not be charged to the client, or, in this case, the adversary. As the Supreme Court made clear, "[i]n the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (internal quotations and citation omitted). Surely then, sound business and ethical discipline require that counsel not saddle an adversary, as well as a client, with the costs he inherently and necessarily incurs from conducting business in a law firm setting, which, no doubt, includes staff changes and other logistical hurdles. Simply put, the plaintiff should not be penalized for having chosen a law firm instead of a sole practitioner – nor should the defendant.

Although not for the reason advanced by the defendant, the court finds the hours spent working on certain discovery matters unreasonable as well, thus warranting an additional

reduction in fees. The defendant argues that time spent by plaintiff's counsel on a discovery motion is not compensable because the motion was denied by this court. The "partial success" doctrine relied upon by the defendant is misplaced, however. First enunciated by the Court in *Hensley*, it provides a basis for adjusting a fee award "to exclude any hours spent on severable unsuccessful *claims*." *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004) (citation omitted) (emphasis added). The doctrine has no bearing on fees for discovery practice. *See Martinez v. Port Authority of New York and New Jersey*, No. 01 Civ 721, 2005 WL 2143333, at *24 (S.D.N.Y. Sept. 2, 2005) ("While the trial court has discretion to reduce a lodestar fee based on the number of hours expended on a severable, unsuccessful claim, the defendant has not raised any authority showing that attorneys' fees should be reduced when document discovery relevant to a plaintiff's successful claims does not produce a smoking gun.").

Indeed, the law in this circuit dictates an opposite result. As explained by one court,

[A] plaintiff who is ultimately successful may be able to recover reasonable attorneys' fees for interim stages of the litigation at which the plaintiff did not prevail. Where plaintiff has obtained relief on the merits, the Second Circuit has stated that "she should not necessarily be denied fees for hours expended on interim stages of the case in which a ruling was made in favor of the party against whom she ultimately prevailed." In such a case, the Court of Appeals has suggested, "the proper inquiry is not whether [plaintiff's] efforts on appeal itself were successful, but rather whether, in light of the circumstances of the litigation as a whole, those efforts were reasonable."

*New York State Nat'l Org. for Women v. Terry*, 94 F. Supp. 2d 465, 468 (S.D.N.Y. 2000) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 880 (2d Cir. 1998)). There is nothing here to suggest that the discovery motions were unreasonably made or somehow a product of bad faith.

What the court is concerned about, however, is the amount of time spent by plaintiff's counsel on appealing the court's denial of the motion, which sought the deposition of a non-party

witness for purposes of proving a conflict of interest on the part of the claims administrator. The court recognizes that the appeal, although ultimately denied by Judge Glasser, was properly filed. Nor is it the court's intention to penalize plaintiff's counsel for discharging his ethical obligation of zealous representation in pursuing every legal avenue available. Yet, having already spent a significant amount of time briefing the issue before this court, counsel's decision to expend even more time on an appeal, that, at the end, only sought relatively minor relief, i.e., a deposition of a non-party witness to explore a possible conflict of interest, in the face of an already expansive record of favorable evidence, is unreasonable and should not lead to additional fees. This, in the court's view, is another scenario where proper "billing judgment" was lacking.

Lastly, the firm's practice of billing in quarter-hour increments warrants a fee reduction. Under this billing system, charges for minor yet ubiquitous tasks lasting less than 15 minutes, like making a routine phone call or writing an email, lead invariably to excessive fees.[13] For that reason, an additional percentage reduction is warranted.

---

[13]Other courts have recognized the potential excessiveness of billing in quarter-hour increments. *See, e.g.*, *King v. Unique Rigging Corp.*, No. 01-CV-3797, 2006 WL 3335011, at *3 n.1 (E.D.N.Y. Oct. 27, 2006) (Irizarry, J., Pohorelsky, Mag. J.) (noting that "use of quarter-hour segments, rather than shorter segments such as tenths of an hour, may have resulted in some overstatement of time"); *Oxford Venture Fund Ltd. P'ship v. CIT Group/Equip. Fin., Inc.*, No. 80 Civ. 1836, 1990 WL 176102, at *2 (S.D.N.Y. Nov. 5, 1990) ("More troubling is the use of quarter-hour increments by defendants' counsel in their recording of attorney time expended. [...] [U]sing increments that are too broad leads to excessive billing. This is especially true for activities that take little time."); *Natale v. City of Hartford*, No. H-86-928, 1989 WL 132542, at *2 (D. Conn. Sept. 12, 1989) (finding "unreasonable" the fact that "[n]o entry is billed for less than 0.25 hours, and more are rounded off to the nearest quarter-hour."). *But cf. Corbett v. Guardian Worldwide Moving Co.*, 164 F.R.D. 323, 330 (E.D.N.Y. 1995) (finding "attorneys' billing in quarter-of-an-hour units . . . not unreasonable *per se*," since "brief and incidental phone conversations" are not billed).

The other arguments advanced by the defendant are meritless and do not support any further reduction of fees and costs. One particular point merits some discussion, however. The defendant, relying on *Peterson v. Continental Cas. Co.*, 282 F.3d 112 (2d Cir. 2002), contends that fees incurred before the drafting of the complaint are not compensable since they are pre-litigation in nature and thus not covered by the ERISA statute which only authorizes an award of fees incurred in an "action." *See* 29 U.S.C. § 1132(g)(1). While the Second Circuit in *Peterson* has, indeed, interpreted ERISA as prohibiting the award of "pre-litigation fees and costs" – those at issue in *Peterson* had to with an initial administrative claims process – it also made clear that an ERISA litigant "is entitled to collect a reasonable amount for fees and costs incurred in initiating a suit in the District Court." *Peterson*, 282 F.3d at 119, 121 n.5. It noted further that "time spent drafting the complaint is properly considered part of the litigation in a district court, even though it occurs prior to filing." *Id.* at 121 n.5. Only by adopting a myopic and unrealistic interpretation of *Peterson* can the fees which the defendant takes issue with here be considered pre-litigation. Those fees were associated with time spent reviewing the plaintiff's medical records and determining what claims to assert and where, all indispensable steps in initiating an ERISA action. The defendant seems to view the drafting of a complaint as a process of divine inspiration where no preparatory work such as familiarizing oneself with the facts of the case is necessary. This is nothing short of frivolity. The fees at issue here are not "pre-litigation" as understood under *Peterson* but were "incurred in initiating a suit in the District Court," and are therefore properly compensable under ERISA. *Id.* at 121.

For the reasons stated above, the court considers an overall fifteen percent (15%) reduction of the fees sought to be warranted.

Finally, to the extent plaintiff's counsel is being compensated under a contingency fee agreement, the statutory fee award here must be used to offset fees owed under the agreement to avoid double compensation. *Conners*, 2003 WL 1888726, at *2 (citing *Venegas v. Mitchell*, 495 U.S. 82, 89 (1990)).

### 3.     Reasonableness of Costs

An attorneys' fees award also includes "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *United States Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989) (citation omitted). The court finds the costs claimed here reasonable except for those seeking reimbursement for online legal research.[14] The Second Circuit has made clear "that computer research is merely a substitute for an attorneys' time that is compensable under an application for attorneys' fees and is not a separately taxable cost." *United States ex. rel Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996) (citing *Haroco, Inc. v. Am. Nat'l Bank and Trust Co. of Chicago*, 38 F.3d 1429, 1441 (7th Cir. 1996)). That, of course, does not mean computer research "costs" are not compensable at all, only that they more appropriately considered and compensated as attorneys' fees. The rationale for this, first articulated by the Seventh Circuit in *Haroco*, stems from the recognition that

---

[14]In contesting the costs, counsel for the defendant again takes positions which border on the frivolous. In particular, it argues that plaintiff's counsel should not be compensated for costs associated with a deposition transcript because the deposition (of Ana Rodriguez, a claims specialist for the defendant) was "taken for discovery purposes only and not reasonable [sic] necessary for use in this litigation." A brief glance at the plaintiff's summary judgment papers, however, reveals that Ms. Rodriguez was a central figure in the litigation. (*See, e.g.*, Pl.'s Mem. of Law in Opp'n Summ. J. 53-54 & n.10, 65 n.12, 66.) Indeed, the defendant itself submitted an affidavit from Ms. Rodriguez in support of its motion for summary judgment.

computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching. Therefore, [there is] no difference between a situation where an attorney researches manually and bills only the time spent and a situation where the attorney does the research on a computer and bills for *both* the time and the computer fee. In both cases the total costs are attorney's fees and may not be recovered as "costs."

*Haroco*, 38 F.3d at 1440-41. *Accord Raniola v. Bratton*, No. 96 Civ. 4482, 2003 WL 1907865, at *8 (S.D.N.Y. Apr. 21, 2003) (Dolinger, Mag. J.). Accordingly, the computer research costs at issue will be shifted to and compensated as fees. The court finds the other costs reasonable and thus compensable.

## CONCLUSION

For the reasons stated above, the court respectfully recommends that the plaintiff be awarded $135,059.96 in total attorneys' fees and $3,229.01 in total costs.[15] The court also recommends that a prejudgment interest rate of 9% be applied here.

\*           \*           \*           \*           \*           \*           \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court with a copy to the undersigned within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed.

---

[15]To clarify, the court arrived at the total fee amount by adding fees incurred during both billing periods and the online research expenses shifted from "costs," and then deducting fifteen percent (15%) of that amount. The total cost award reflects the amount originally sought less the online research "costs."

R. Civ. P. 72(b); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
      February 6, 2007